**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00853-STV

RHETT TAVERNETTI and
VANESSA TAVERNETTI,

    Plaintiffs,

v.

FREDRICK COOGAN,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First, Second, Third and Fourth Claims for Relief (the "Motion") [#11]. The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings. [#21] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

**I.    BACKGROUND[1]**

    In November 2017, Plaintiffs Rhett and Vanessa Tavernetti moved into a rental home owned by Defendant Frederick Coogan in Boulder, Colorado. [#2 at ¶¶ 7-8] Plaintiffs had been exposed to mold in a previous home, causing Ms. Tavernetti to

---

[1] The facts are drawn from the allegations in Plaintiffs' Complaint [#2], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

suffer adverse health consequences.  [*Id.* at ¶¶ 15-16]  As a result, before moving into Defendant's home, Plaintiffs specifically asked Defendant about past mold or water damage.  [*Id.* at ¶ 13]  Defendant told Plaintiffs that the home had no history of mold or significant water damage and that the home had been tested for mold.  [*Id.* at ¶¶ 9, 10, 12]  Despite these statements, Defendant was aware that a prior tenant "was exposed to mold in the [h]ome, had testing done, and had numerous discussions with Defendant regarding [the mold]."  [*Id.* at ¶¶ 78, 79]

When Plaintiffs moved into the home, Ms. Tavernetti was at a "recovery level" from her earlier mold exposure.  [*Id.* at ¶ 17]  One month after the move, Ms. Tavernetti began experiencing symptoms of illness.  [*Id.* at ¶ 19]  Those symptoms escalated, and in January 2018 Ms. Tavernetti sought medical treatment.  [*Id.* at ¶¶ 20-21]  Dr. Denise Cooluris conducted blood testing on Ms. Tavernetti and diagnosed her with "mold exposure and consequent neurotoxin detoxification."  [*Id.* at ¶¶ 51, 53]

Plaintiffs believed the mold exposure was from the rental home and began mold testing at the end of February 2018.  [*Id.* at ¶¶ 23-24]  Testing was completed in March 2018 and confirmed the presence of toxic levels of mold in the home.  [*Id.* at ¶¶ 25-26]  Plaintiffs then discussed mold remediation with Defendant and believed it could be completed within a few weeks, but Defendant refused to agree to the necessary repairs.  [*Id.* at ¶¶ 29, 31, 34]  Plaintiffs moved into a trailer in their driveway from March 2018 to July 2018, while they believed Defendant was working toward remediation of the home.  [*Id.* at ¶¶ 35, 37]  In fact, Defendant did not remediate the mold.  [*Id.* at ¶ 39]  Plaintiffs ended their tenancy in Defendant's home at the end of July 2018.  [*Id.* at ¶ 38]

As a result of mold in the home, Ms. Tavernetti received treatment for mold exposure from January 2018 to January 2019 from at least eight medical practitioners. [*Id.* at ¶¶ 42-66]   Ms. Tavernetti experienced symptoms including:   (1) "numbness/tingling in the right side of her face six times per day at least, hand neuropathy, numbness in her feet, fatigue, pain, and stiffness in her neck and shoulders" [*Id.* at ¶ 43]; (2) insomnia [*Id.* at ¶ 45]; (3) chronic fatigue, headache, and mild cognitive impairment [*Id.* at ¶ 46]; (4) elevated inflammatory markers [*Id.* at ¶ 47]; and (5) "extreme stress, anxiety, chest heaviness/tightness, palpitations, tingling in her hands, a breakdown, and bothersome, negative thinking" [*Id.* at ¶ 49].   Plaintiffs additionally had to destroy many possessions due to mold, including "furniture, clothing, bedding, and books."  [*Id.* at ¶ 40]  Plaintiffs would not have moved into the home "but for Defendant's assurance that the [h]ome did not have any prior incidents involving mold."  [*Id.* at ¶ 74]

Plaintiffs initiated the instant action in the 20th Judicial District Court of Boulder County, Colorado on January 26, 2020.  [#2]  The Complaint alleges five causes of action:   (1) Negligent Misrepresentation Causing Physical Harm; (2) Negligent Misrepresentation Causing Financial Loss; (3) Fraud; (4) Breach of Warranty of Habitability under Colo. Rev. Stat. § 38-12-505; and (5) Liability under the Premises Liability Act, C.R.S. § 13-21-115.  [*Id.* at ¶¶ 80-114]   Plaintiffs seek monetary damages. [*Id.* at 14]

Defendant removed the action to this Court on March 27, 2020. [#1]  On April 3, 2020, Defendant filed the instant Motion, arguing that Plaintiffs' First, Second, Third, and Fourth claims should be dismissed pursuant to Federal Rule of Civil Procedure

3

12(b)(6). [*See generally* #11]  Plaintiffs have filed a response [#16], and Defendant has replied.  [#17]

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief

4

under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   ANALYSIS

Defendant seeks dismissal of Plaintiffs' negligent misrepresentation, fraud, and warranty of habitability claims pursuant to Federal Rule of Civil Procedure 12(b)(6). [*See generally* #11]   Defendant argues that each of the four claims at issue is preempted by the Colorado Premises Liability Act ("CPLA").  C.R.S. § 13-21-115(2). [*Id.* at 5-6]   Even if not preempted by the CPLA, Defendant argues that: (1) the economic loss rule bars Plaintiffs' negligence claims; (2) the merger clause in the home's lease agreement bars Plaintiffs' negligence and fraud claims; (3) Plaintiffs' negligence claims were filed after the applicable statute of limitations; and (4) the Complaint does not state a claim under Colorado's warranty of habitability statute.  [*Id.* at 7-11]   The Court's jurisdiction in this matter is based on diversity of citizenship under 28 U.S.C. § 1332(a) and, therefore, the Court applies the substantive law of Colorado to determine whether Plaintiffs have sufficiently plead their First, Second, Third, and Fourth claims.

The Court agrees with defendant that Plaintiffs' common law claims—the First, Second, and Third claims—are preempted by the CPLA,[2] but disagrees as to the Fourth claim under the warranty of habitability statute.  The Court additionally finds that Plaintiff has sufficiently stated a claim under the warranty of habitability statute.

---

[2] Because the Court finds that these claims are preempted by the CPLA, it finds it unnecessary to address the alternative theories of economic loss, merger, and statute of limitations.

### A. Colorado Premises Liability Preemption

The CPLA "delineates duties owed by landowners to third persons who enter on the land under circumstances that cause those persons to be categorized as trespassers, licensees, or invitees." *Trailside Townhome Ass'n, Inc. v. Acierno*, 880 P.2d 1197, 1202 (Colo. 1994) (en banc). "The statute applies to a personal injury action that meets four requirements: (1) the action involves the plaintiff's entry on the landowner's real property; (2) the plaintiff's injury occurred while on the landowner's real property; (3) the injury occurred by reason of the property's condition, activities conducted on the property, or circumstances existing on the property; and (4) the landowner breached the duty of care it owed the plaintiff under the premises liability statute's classification of trespasser, licensee, or invitee." *Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 562 (Colo. 2013).

The CPLA was enacted to "protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth" in the statute. C.R.S. § 13-21-115(1.5)(e). Thus, the "overriding purpose of the premises liability statute is to clarify and to narrow private landowners' liability to persons entering their land. . . . General negligence law would not provide such protection." *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1219 (Colo. 2002) (en banc) (internal citations omitted); *see also Danielson v. Wal-Mart Stores, Inc.*, 06-cv-00053-EWN-PAC, 2006 WL 2385215, *2 (D. Colo. Aug. 17, 2006).

Subsection (2) of the CPLA states: "In *any civil action* brought against a landowner by a person who alleges injury occurring while on the real property of

6

another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable *only as provided in subsection (3) of this section.*" C.R.S. § 13-21-115(2) (emphasis added). The Colorado Supreme Court has determined that "[t]he express, unambiguous language of subsection (2) . . . evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property," and "it's intent to completely occupy the field and supercede the existing law in the area." *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004). Moreover, the language of subsection (2) "coupled with the precisely drawn landowner duties in subsection (3), leaves no room for application of common law tort duties." *Id.* "[A] plaintiff may recover against a landowner only as provided under the statute, and not under any common law theory." *Wilson v. Marchiondo*, 124 P. 3d 837, 840 (Colo. App. 2005).

The CPLA thus preempts common law causes of action against landowners for injuries occurring on their land and by reason of the property's condition. The statute defines a "landowner" as a "person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." C.R.S. § 13–21–115(1). Here, the Complaint alleges that the injury occurred on property—the rental home—owned by Defendant and that Plaintiffs, as tenants, were invitees under the CPLA. [#2 at ¶¶ 7, 8, 73, 109] Indeed, Plaintiffs Fifth claim for relief is pursuant to the CPLA. [*Id.* at ¶¶ 108-114] Therefore, preemption of Plaintiffs' common law claims of misrepresentation and fraud turns on whether the Complaint alleges injuries that occurred "by reason of the condition

7

of such property, or activities conducted or circumstances existing on such property." C.R.S. § 13-21-115(2).

The Colorado Supreme Court has determined that the CPLA "applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner." *Larrieu*, 303 P.3d at 563. Liability under the statute is neither "restricted solely to activities and circumstances that are directly or inherently related to the land" nor extended to "any tort that happens to occur on another's property." *Id*. "This analysis necessitates a fact-specific, case-by-case inquiry into whether: (a) the plaintiff's alleged injury occurred while on the landowner's real property; and (b) the alleged injury occurred by reason of the property's condition or as a result of activities conducted or circumstances existing on the property." *Id*.

Applying the *Larrieu* two-part inquiry, the Court finds that Plaintiffs seek redress for injuries that subject their claims to the CPLA preemption. Plaintiffs assert injuries to Ms. Tavernetti's health and the couple's personal property due to mold they were exposed to "while on the landowner's real property." [*See* #2 at ¶¶ 19-20, 26] *Larrieu*, 303 P.3d at 563. Moreover, Plaintiffs' Complaint asserts that the injuries occurred "by reason of" the mold on the property. [#2 at ¶¶ 41, 73] *Larrieu*, 303 P.3d at 563.

Plaintiffs argue that the misrepresentation and fraud claims should receive legal consideration separate from the CPLA claim because Defendant's misrepresentations induced them to enter the property in the first place.[3] [#16 at 7] But the CPLA makes no such distinction for fraud or misrepresentation where the injury itself is due to a

---

[3] Specifically, Plaintiffs assert that if the CPLA preempts their claims, then "a defendant would be able to escape liability for all kinds of independent wrongful actions merely because of his status as a landowner." [#16 at 7]

condition on the landowner's property, and Plaintiffs cite no cases in support of their position.  Indeed, the Colorado Supreme Court has specifically recognized that the CPLA does in fact "narrow private landowners' liability to persons entering their land," *Pierson*, 48 P.3d at 1219, and is "the sole codification of landowner duties in tort" under Colorado law.  *Lombard v. Colorado Outdoor Educ. Center, Inc.*, 187 P.3d 565, 574 (Colo. 2008).  This interpretation is consistent with past application of the CPLA to preempt a wide variety of claims for property-related injuries.  *See e.g., Wyle v. Skiwatch*, 183 F. App'x 760, 762 (10th Cir. 2006) ("[W]hether a contract existed and whether a defendant [breached that contract] is immaterial because . . . Colorado's premises liability statute provides the exclusive remedy against a landowner for injuries sustained on the landowner's property."); *Danielson*, 2006 WL 2385215 at *3 (dismissing plaintiff's negligent supervision, hiring, and training claims and finding that "[s]ubsection two of the premises liability statute simply requires examination of the circumstances surrounding a plaintiff's injury. . . [and] [s]atisfaction of the subsection two inquiry triggers the preemption of common law duties" by the CPLA).

Moreover, Plaintiffs' allegations of misrepresentation and fraud will not go unrecognized if brought solely under the CPLA.  Instead, where a plaintiff is injured on a landowner's property, "a landowner's conduct—even if such conduct took place away from the premises where a guest was injured—is potentially relevant to the subsection three determination whether such landowner breached the applicable statutory duty owed to its injured guest."  *Danielson*, 2006 WL 2385215 at *3.  Therefore, because Plaintiffs allege only injuries occurring on and by reason of the condition of Defendant's

property, the CPLA preempts all other common law causes of actions as to those injuries, including Plaintiffs' claims for misrepresentation and fraud.

As to Plaintiffs' Fourth claim under Colorado's warranty of habitability statute, C.R.S. § 38-12-505, the CPLA provides preemption for common law claims, not statutory ones. *Vigil*, 103 P.3d at 328 ("[T]he plain language [of the CPLA] preempts prior common law theories of liability."). Even if, however, CPLA preemption is extended to statutory claims, principles of statutory construction require Plaintiffs' Fourth claim to survive. In enacting a statute, "it is presumed that . . . [t]he entire statute is intended to be effective." C.R.S. § 2-4-201. "If we conclude that two applicable provisions are irreconcilable, we assume the General Assembly is aware of its prior enactments and deem the more recent statute to prevail over the older one." *People in Interest of W.P.*, 295 P.3d 514, 519 (Colo. 2013) (citing *Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 242 (Colo. 2009); C.R.S. § 2-4-206).

The warranty of habitability statute in effect at the time of the allegations in the Complaint provided that "[w]hether asserted as a claim or counterclaim, a tenant may recover damages directly arising from a breach of the warranty of habitability." C.R.S. § 38-12-507. This provision was originally enacted in 2008, more than 20 years after the CPLA was first enacted in 1986. *Id.*; *Vigil*, 103 P.3d at 326 (describing the history of the CPLA). Thus, the Court assumes both that the General Assembly was aware of the preemptive nature of the CPLA and that it nevertheless intended for tenants to be able to assert a claim for damages under the warranty of habitability statute. Accordingly, while Plaintiffs' First, Second, and Third claims are preempted by the CPLA, the Fourth claim is not.

**B. Breach of Warranty of Habitability**

Defendant asserts in the alternative that Plaintiffs' Fourth Claim should be dismissed for failure to state a claim under the applicable version of the Breach of the Warranty of Habitability statute. [#11 at 10-11] C.R.S. §§ 38-12-503, -505. Defendant argues that because the Complaint cites a version of the statute not yet in effect during Plaintiffs' tenancy in Defendant's home, Plaintiffs have not and cannot state a claim under the statute. [*Id.*]

"[T]he court is not bound by the formal designation given a claim by the plaintiff; the factual allegations are what matter." *Walters v. S&F Holdings LLC*, No. 14-cv-02006-REB-MJW, 2015 WL 4653147, *2 (D. Colo. Aug. 6, 2015). "As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because she did not set forth in the complaint a theory on which she could recover . . . . The purpose of 'fact pleading,' as provided by Fed.R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him . . . ." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991) (internal quotations and citations omitted).

Here, Plaintiffs allege sufficient facts to state a claim under the operable version of the statute, which states that a landlord breaches the warranty of habitability if (1) the premises is uninhabitable, as described in section 505, or "otherwise unfit for human habitation," (2) the premises' condition is "materially dangerous or hazardous to the tenant's life, health, or safety," and (3) the landlord received written notice of the condition and failed to remedy the problem within a reasonable time. C.R.S. § 38-12-503(2) (2017). Here, the Complaint alleges that the rental home was uninhabitable due

to mold,[4] which caused damage to Mrs. Tavernetti's health, and that Plaintiffs provided written notice to Defendant, who failed to remedy the problem. [#2 at ¶¶ 103-105]. As such, the facts in the Complaint are sufficient to state a claim under the statute and put Defendant on notice of that claim.

Accordingly, the Court GRANTS the Motion to dismiss Plaintiffs' First, Second, and Third claims as preempted by the CPLA and DENIES the Motion as to Plaintiffs' Fourth claim.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' First, Second, and Third Claims for Relief and **DENIES** the Motion as to Plaintiffs' Fourth Claim for Relief.

DATED:  September 4, 2020                                    BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[4] Although the definition of "uninhabitable" in the applicable version of the statute does not contain a provision specific to mold, Plaintiffs can maintain the claim under the catchall provision: "A residential premises is deemed uninhabitable if it substantially lacks any of the following characteristics. . . Compliance with all applicable building, housing, and health codes, which, if violated, would constitute a condition that is dangerous or hazardous to a tenant's life, health, or safety."  [#16 at 14-15] C.R.S. § 38-12-505(1)(k) (2008).  Plaintiff's reply brief fails to respond to this argument or the fact that a landlord breaches the warranty of habitability by providing a residence that is uninhabitable *or* "otherwise unfit for human habitation."  [#17 at 8-9] C.R.S. § 38-12-503(2)(2017).

12